■ MILAU ASSOCIATES, INC., Plaintiff, v NORTH AVENUE DEVELOPMENT CORP., Defendant. (Action No. 1.) BAUM TEXTILE MILL CO., INC., et al., Appellants, v MILAU ASSOCIATES, INCORPORATED, et al., Respondents. (Action No. 2.)—In an action to recover for damages to property predicated upon negligence and breach of warranty, plaintiffs in Action No. 2 appeal from a judgment of the Supreme Court, Rockland County, dated September 4, 1975, which, after a jury trial, is in favor of defendants in Action No. 2 and against them. Judgment affirmed, with one bill of costs jointly to respondents. Appellants are occupants of an office and industrial building in Orangeburg, New York. Defendant Milau Associates, Inc., is a general contractor; it undertook construction of the said building in 1969 and agreed to provide and install a sprinkler system. Defendant Higgins Fire Protection, Inc., entered into a subcontract with Milau Associates, whereby it agreed to provide and install the said sprinkler system. The plans and specifications for the installation of the sprinkler system were prepared by Higgins Fire Protection. As part of the sprinkler system, Higgins installed an eight-inch pipe which connected the meter pit in the street to the sprinkler system in the building. Installation of the entire system was completed in December, 1969 and parts of the building were occupied the same month. Five months later, in May, 1970, the eight-inch pipe from the meter pit to the building burst, causing large amounts of water to enter the building. Bolts of textiles, stored within the building by appellants, were allegedly damaged. At the trial, evidence was adduced that Higgins had utilized 20-foot sections of pipe in connecting the meter pit to the sprinkler system; some of the sections were cut into smaller lengths by Higgins before being installed. Appellants' expert, an architect and engineer, testified that he examined the section of pipe which had burst and that the cause of the break was a V-shaped notch at the end of the pipe, at the root of which a crack had started. It was the expert's opinion that the notch was caus 'd by a dull tooth on a hydraulic squeeze cutter which had been used to cut the pipe; such a notch would affect the integrity of the pipe. The question of negligent installation of the pipe was submitted to the jury. Trial Term refused a request by appellants to charge that the respondents "impliedly warranted that the pipe in question was fit for the purposes for which it was intended." The jury returned a verdict in favor of respondents. On this appeal appellants claim that Trial Term's refusal to charge as to implied warranty was error and that Trial Term should have charged that there was an implied warranty of fitness for a particular purpose (see Uniform Commercial Code, § 2-315). In the alternative, they argue that even if the warranty provisions of article 2 of the code are inapplicable, there was an implied warranty at common law "that the sprinkler system as installed would be fit for its intended purpose." Both contentions must be rejected. Although, in a proper case, the implied warranty provisions of the Uniform Commercial Code might apply to the "sale of goods" aspect of a hybrid sales-

services contract (see *Schenectady Steel Co. v Trimpoli Gen. Constr. Co.*, 43 AD2d 234 [concurring opn by Greenblott, J.], affd 34 NY2d 939; *Newmark v Gimbel's Inc.*, 54 NJ 585), the record is devoid of any evidence that the pipe installed by Higgins was unfit for its intended purpose. The entire thrust of appellants' proof was that the pipe was *installed* in a negligent manner. That being the case, Trial Term properly refused to charge that there was an implied warranty that the pipe—i.e., the "goods"—was fit for any particular purpose. Nor is any warranty with respect to services implied by the common law (see *Aegis Prods. v Arriflex Corp. of Amer.*, 25 AD2d 639). Where services have been performed in a faulty or slipshod manner, the law provides for recovery on the theory of negligence (see *Perlmutter v Beth David Hosp.*, 308 NY 100, 108). The jury considered appellants' allegations in that regard and rejected them. The dissent does not distinguish between defective goods and defective workmanship and, in essence, would hold that simply because a problem developed, the respondents are absolutely liable regardless of the cause of the problem. Martuscello, Acting P. J., Margett and Damiani, JJ., concur; Titone, J., dissents and votes to reverse the judgment and grant a new trial, with the following memorandum, in which Latham, J., concurs: The facts in the record support a finding that the respondents made an implied warranty of fitness for a particular use. The respondents undertook to perform the installation and necessary construction of a sprinkler system in the building occupied by appellants. The respondents had reason to know the appellants' particular purpose for the installation of the system and that the appellants were reasonably relying on the respondents' skill and judgment in its construction. It is of no moment to this appeal that section 2-315 of the Uniform Commercial Code does not expressly apply to this contract. Several sections of the code have been extended by analogy (see *Vitromar Piece Dye Works v Lawrence of London,* 119 Ill App 2d 301, where § 2-607 was applied to a service contract; *Hunt Foods & Ind. v Doliner,* 26 AD2d 41, where § 2-202 was applied to a sale of securities; see, also, White & Summers, Uniform Commercial Code, Introduction, § 4, p 17). Moreover, the Uniform Commercial Code does not pre-empt existing case law. It was not the intent of the writers of the code to impede the development of warranty protection outside of the law of sales contracts (see Official Comment, McKinney's Cons Laws of NY, Book 62½, Uniform Commercial Code, § 2-313, p 240). The common law recognizes the existence of an implied warranty of fitness for a particular purpose in a contract for a specific work. I am of the opinion that the law should import into the instant contract an implied warranty that the sprinkler system installed by the respondents would be proper and suitable for the purpose for which it was designed, namely, fire prevention (cf. *Duenewald Print. Corp. v Putnam's Sons,* 276 App Div 26, 32, revd on other grounds 301 NY 569; see, also, *Miller v Winters,* 144 NY Supp 351). The appellants were entitled to have the jury charged as to the existence of an implied warranty of fitness for a particular use. Consequently, the judgment should be reversed and a new trial granted.