In the Matter of GISELLA DIVISICH et al., Appellants, against JAMES MARSHALL et al., Constituting the Board of Education of the City of New York, Respondents.

Argued July 11, 1939; decided July 11, 1939.

*Leonard M. Wallstein, Leonard M. Wallstein, Jr.,* and *Benjamin Menschel* for appellants.

*Herman E. Cooper* and *Charles Barasch* for Teachers Union of the City of New York, *amicus curiæ.*

*William C. Chanler, Corporation Counsel (Frederick vP. Bryan, Seymour B. Quel* and *Nicholas Bucci* of counsel), for respondents.

CRANE, Ch. J.  If there be one public policy well-established in this State it is that public education shall be beyond control by municipalities and politics.  The Board of Education of the City of New York is not a department of the city government, it is an independent corporate body and may sue and be sued in its corporate name (Education Law [Cons. Laws, ch. 16], §§ 300, 865; *Matter of Fleischmann v. Graves*, 235 N. Y. 84.)  As early as 1921 (*Matter of Emerson v. Buck*, 230 N. Y. 380) we decided that while the municipality must make appropriations of money to run the schools, the expenditure of that money when once appropriated vested solely in the Educational Board.  This was followed and cited in *Matter of Fuhrmann v. Graves* (235 N. Y. 77, 82) when this court said: " The intent of the legislature in enacting the Education Law is clear.  It imposes upon the boards of education, as separate corporate bodies representing the state, the responsibility of furnishing an efficient system of public education (*People ex rel. Wells & Newton Co. v. Craig*, 232 N. Y. 125), and in this respect they are not subject to or controlled by the city authorities.  In order to enable such boards to properly discharge the duties thus imposed, they are clothed with authority to act

independently of the city authorities. As to when, how and where the amounts placed at their disposal shall be disbursed, each board exercises an independent judgment, uncontrolled by and in no respect interfered with or influenced by the city authorities. The boards cannot incur a liability or an expense chargeable against the funds under their control except for educational purposes, and this only to the extent of the amounts placed at their disposal. (Education Law, § 877, subd. 3, as amended by Laws of 1917, chap. 786.) While such boards are required each year to submit to the city council itemized estimates of the amounts which will be required for educational purposes for the fiscal year (Education Law, as amended by Laws of 1917, chap. 786, § 877, subd. 1) the council may, nevertheless reduce, in its discretion, the total amount thus estimated. (*Matter of Emerson* v. *Buck, supra.*) " (See, also, *Matter of Fleischmann* v. *Graves*, 235 N. Y. 84.)

The city has the machinery for raising the money by taxation and must see that the total appropriations do not exceed the constitutional limitations. The present charter of the city of New York has not changed this policy — no such radical step was even proposed. These cases decided by this court still hold good. *Matter of Brennan* v. *Board of Education* (245 N. Y. 8), may be added to the list.

The Board of Education of the City of New York must comply with the formula provided in the charter of that city in making its requests or demands for necessary funds, furnishing by line items or other specified methods, the information necessary to enable the Board of Estimate to act intelligently, but otherwise it has full control over those funds when appropriated except as controlled by acts of the Legislature — mandatory salary payments. Except as to these it may abolish any position at any time. Here are some of the powers given to the Board by the Education Law: " To create, abolish, maintain and consolidate such positions, divisions, boards or bureaus as, in its judgment, may be necessary for the proper and efficient administration of its work " (§ 868, subd. 2.)

For the purpose of obtaining money to meet its expenses, the Board is required to prepare annually an itemized estimate of the sums of money which it deems necessary for educational purposes containing detailed schedules and must show separately the total amount to be derived from local revenues and from State aid. (§ 877, subd. 14).

When an appropriation by the city has been made, " The board of education shall administer all moneys appropriated or available for educational purposes in the city, subject to the provisions of law relating to the audit and payment of salaries and other claims by the department of finance " (§ 877, subd. 7). Necessarily and by this law expenditures and liabilities chargeable to these funds are limited to the appropriation.

No State aid is granted for kindergarten pupils or teacher units. Salaries payable to the teaching and supervisory staffs are mandatory, with few exceptions, but otherwise the Board has complete discretion in disbursing its money.

This case relates to no mandatory payments. The appeal rests upon the proposition that under the present charter the Board is restricted to the line proposal in its budget estimate as submitted and adopted by the Board of Estimate for the year 1939–1940 and must spend the money if it has it, that is, cannot abolish any teaching position. As it turns out the Board has not sufficient money but, says the appellant, it has no power to reduce its teaching staff to keep within its means. Reliance is placed upon our recent decision in *Matter of Rushford* v. *LaGuardia* (280 N. Y. 217), which has nothing to do with the Board of Education or its powers.

Believing that the State would give $57,912,392.76 toward the school funds for New York city, the Board in its budget asked the municipality for $102,374,095.63. The total sum appropriated was $155,243,934.36. The State, however, did not meet expectations and the Board is about $8,000,000 short. In other words, there is a discrepancy between estimated expenditures and revenues receivable of about that amount. No one suggests that

any more money can be obtained, so the only possible thing to do, not as a choice but as an absolute necessity, is to reduce expenses. This the Board proposed to do by abolishing certain positions in the day classes for adults, community recreation centres and kindergartens as such. Certain of the older children in the kindergartens will be taken in other existing classes.

The Special Term granted an order restraining the Board of Education from taking any such action. The Appellate Division reversed and held that the Board had full discretion in the circumstances and acted within its statutory powers. We can find no answer to this conclusion and accordingly affirm its order.

The order of the Appellate Division should be affirmed, without costs.

LEHMAN, HUBBS, LOUGHRAN, FINCH and RIPPEY, JJ., concur; O'BRIEN, J., taking no part.

Order affirmed.