In the Matter of the Application of WILLIAM EISENBERG and Others, Respondents, for an Order against THE BOARD OF EDUCATION OF THE CITY OF NEW YORK, WILLIAM A. HANNIG and Others, Composing and Constituting The Board of Examiners of The Board of Education of The City of New York, and Others, Appellants.

First Department, June 5, 1942.

*Nicholas Bucci* of counsel [*Paxton Blair* with him on the brief; *William C. Chanler, Corporation Counsel,* attorney], for the appellants.

*James B. Wigdor,* for the respondents.

COHN, J. Petitioners, eight in number, hold places on the eligible list for teachers of health education in junior high schools of the city of New York. The list was promulgated in August, 1939. In June, 1940, the board of superintendents recommended to the board of education the appointment of thirty teachers from this list. These appointments were thereupon duly made effective September, 1940. Four of the thirty nominated declined appointment. To fill the vacant places caused by the declinations, the board of superintendents in November, 1940, considered for appointment a slate containing the names of four of the petitioners, to wit, Eisenberg, Gruber, Press and Rothenberg. However, the board of superintendents after due deliberation decided that no appointments should then be made and the proposed list was not approved. As appointments of teachers are made by the board of education of the city of New York only upon recommendation of the board of superintendents (Education Law, § 872), these four petitioners were not appointed.

In March, 1941, the petitioners instituted this proceeding to compel their appointment upon the ground that four vacancies had come into existence in September, 1940; that these vacancies continued for at least six months thereafter; that no appointments had been made from the appropriate eligible list to fill them and

that by virtue of the provisions of the law they were entitled to be appointed.

After a trial the court determined by order dated December 23, 1941, " that there exist four vacancies for regular teachers of Health Education in the Elementary and Junior High Schools of the City of New York and that such vacancies have existed for more than six months last past; " it directed the recommendation by the board of superintendents for the appointment of four teachers of health education in the elementary and junior high schools from the eligible list and the appointment by the board of education of those nominated. It is from this final order that defendants appeal. The order made no finding as to when the vacancies had arisen but it determined that they existed as of the date of the order.

The statute provides: " Appointments shall be made from appropriate eligible lists to fill all existing vacancies not later than six months from the date of the existence of such vacancy." (Education Law, § 872, subd. 1a, added by Laws of 1937, chap. 916, in effect June 5, 1937; operation of this provision of the statute suspended until July 1, 1943, Laws of 1942, chap. 728.) Petitioners contend that there were four vacancies created by declination of appointment of four teachers in September, 1940, and that such vacancies have continued ever since. They also show that many of them were employed as substitute teachers during the entire period from September, 1940, up to the date of trial. The fact that in such a large school system substitute teachers are employed to fill places does not in and of itself connote the existence of vacancies. There may be many causes for temporary absences. In any event, there was no proof that any petitioner had been assigned permanently to a vacant position.

Petitioners also rely upon the fact that in November, 1940, the board of superintendents had considered a slate of four names prepared by its clerical division, known as the division of appointments, and that again in 1941 another list of openings for the position of teacher of health education in the junior high schools had been compiled by that same department on reports emanating from principals of schools throughout the city. Nevertheless, it was established that in each instance the board of superintendents had refused to approve for appointment by the board of education the names on the proposed slates, as there was no need for the appointments. The list of openings did not necessarily reflect the existence of vacancies, for such list did not take into account the number of excess teachers who in due course would be reassigned to fill openings. The mere submission of a list of proposed appoint-

ments prepared by the division of appointments of the board of superintendents, not adopted or approved by the board of superintendents, is not a determination that vacancies exist.

The evidence establishes that a decrease in student enrollment created an excess number of teachers in health education in the junior high schools and that there were no vacancies; that in October, 1940, the pupil registration in junior high schools had decreased by 3,183; that this drop grew more pronounced up to the time of the trial; and that of 3,532 teaching positions in those schools existing on October 31, 1940, 116 were to be eliminated before July 1, 1941. The data submitted by the assistant superintendent in charge of junior high schools showed that as of October 15, 1941, not only were there no vacancies, but there were 39 teachers of health education in excess of actual requirements in the junior high schools.

The board of education must be permitted to exercise a reasonable discretion in adjusting its complex administrative problems. The reassignment of teachers in excess to schools where they may be used to fill openings, according to the testimony, is best arranged at the beginning of the school term. Apparent vacancies are canceled out by teachers who happen to be in excess. Upon the trial, it was shown that up to the end of 1941, in the school system, there had been no less than 1,100 teachers placed into excess. These were temporarily assigned to fill positions caused by sabbatical, maternity or health leaves. It has been the general policy of the board of education, not to discharge teachers and register their names on preferred lists, but whenever possible, to keep them in the service by placing them in other positions. To appoint teachers to positions from eligible lists when there are instructors in excess in the same subject might ultimately result in the dismissal of those regularly appointed. Defendants call attention to the fact that by statute the board of education is precluded from incurring any liability beyond the funds appropriated by the State and city for its use. (Education Law, § 877, subds. 7, 10, 14; *Matter of Divisich* v. *Marshall*, 257 App. Div. 294; affd., 281 N. Y. 170.) The decrease in student enrollment has resulted in a corresponding decrease in State aid, which is based upon the number of pupils enrolled in the schools. In view of all these facts, how could there be a rational basis for the appointment of petitioners in November, 1940, or at any time since?

While we realize that petitioners have demonstrated their fitness for the positions they seek, by having passed the appropriate competitive examinations, and while public policy requires that they be appointed when vacancies exist for the statutory period,

the relief they demand may not be granted unless there is a clear showing that there are, in fact, vacancies and that they have been permitted to remain for a period of six months. The proof, in our view, does not sustain such a finding here.

The order should, accordingly, be reversed and the petition dismissed, but without costs.

MARTIN, P. J., UNTERMYER, DORE and CALLAHAN, JJ., concur.

Order unanimously reversed, without costs, and the petition dismissed.