## (September 26, 1975)

■ In the Matter of the BOARD OF EDUCATION OF THE YONKERS CITY SCHOOL DISTRICT, Appellant, v YONKERS FEDERATION OF TEACHERS, Respondent.—In a proceeding pursuant to CPLR article 75 to stay arbitration, petitioner, the Board of Education of the Yonkers City School District, appeals from an order of the Supreme Court, Westchester County, entered September 2, 1975, which granted a motion by respondent, the Yonkers Federation of Teachers, to dismiss the petition and compel petitioner to proceed with arbitration. Order affirmed, without costs. On November 4, 1974 a collective bargaining agreement was entered into between the parties for the three-year period of July 1, 1974 to June 30, 1977. Article VI of the agreement sets forth the progressively increasing salaries which were agreed upon for each of the three years. Pursuant to article 52 of the Education Law and in May, 1975, petitioner submitted its proposed budget for the 1975–1976 school year to the City Manager of the City of Yonkers. In July, 1975 the Yonkers City Council appropriated the sum of money which the city manager had requested for the operation of the Yonkers school system. This sum was less than that requested by petitioner and, according to petitioner, will be insufficient to meet the contractual salary obligations to the teachers in the Yonkers school system for the second year of the contract. Respondent, feeling aggrieved at petitioner's unilateral decision not to comply with the salary schedule, sought to arbitrate the dispute, under the broad grievance procedure contained in article XIII of the collective bargaining agreement. Petitioner then instituted this proceeding and respondent moved to compel arbitration. We agree with Special Term that petitioner's position is incorrect. The Taylor Law (Civil Service Law, art 14) vests employee organizations with the right not only to represent

public employees in connection with negotiations as to terms and conditions of employment, but also as to the "administration of grievances arising thereunder" (Civil Service Law, § 203) and arbitration is so preferable a means of settling labor disputes that public policy impels its use *(Matter of Associated Teachers of Huntington v Board of Educ., Union Free School Dist. No. 3, of Town of Huntington,* 33 NY2d 229; *Board of Educ. of Union Free School Dist. No. 3 of Town of Huntington v Associated Teachers of Huntington,* 30 NY2d 122). Indeed, such procedure for the resolution of disputes is provided for in subdivision 2 of section 209 of the Civil Service Law. Thus, the contract under review, which contains a broad arbitration clause, is a valid agreement. And since there is such a clause, all unresolved labor disputes within the purview of the agreement must be submitted to arbitration (cf. *Susquehanna Val. Cent. School Dist. at Conklin v Susquehanna Val. Teachers' Assn.,* 46 AD2d 104). In compliance with subdivision 1 of section 204-a of the Civil Service Law, the agreement contains the following provision: "It is agreed by and between the parties that any provision of this agreement requiring legislative action to permit its implementation by amendment of law, or by providing the additional funds therefor *[sic],* shall not become effective until the *appropriate legislative body* has given approval" (emphasis supplied). Petitioner, relying on this provision, urges that the provision of the agreement regarding salaries for the 1975–1976 school year has not become effective, because the additional funds necessary to implement that provision were not appropriated by the Yonkers City Council, and that therefore the agreement is not subject to arbitration. In our view the appropriate legislative body referred to in the above-quoted provision of the agreement is petitioner itself. Subdivision 11 of section 201 of the Civil Service Law provides that "The term 'legislative body of the government,' in the case of school districts, means the board of education". This definition when read in conjunction with the above-quoted provision of the agreement appears to codify the decisions in cases decided long before the unionization of public school teachers, which decisions held that the power to make contracts with teachers rests with the boards of education but that the boards are limited in the amount they can spend on education by the amounts appropriated by the city legislative bodies (see *Matter of Divisich v Marshall,* 281 NY 170; *Matter of Fuhrmann v Graves,* 235 NY 77; *Matter of Emerson v Buck,* 230 NY 380; *Board of Educ. of City of Syracuse v King,* 280 App Div 458, mot for lv to app den 280 App Div 1033, mot for lv to app dsmd 304 NY 973). Accordingly, the legislative body within the meaning of the above-quoted provision of the agreement did give its approval to the salary schedule and no further approval, i.e., by the Yonkers City Council, is required. Penetrating analysis of the scope of the agreement must be left to the arbitrator *(Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co. of Amer.,* 37 NY2d 91). Before rendering his decision though, he should consider not only the contract but the attendant circumstances as well. Hopkins, Acting P. J., Martuscello, Cohalan, Christ and Munder, JJ., concur.