J. Raymond Amyot, J.
In 1966 the plaintiff, Queensbury Union Free School District, by written contract, engaged the defendant, Crandell Associates, Architects, "to perform architectural services with regard to the planning and construction” of an elementary school building.
The standard American Institute of Architects (AIA) printed form contract by which the architects were employed provided that they agreed "to provide professional services.” The resolution of the board of education which authorized employment of the architects recites that the services to be performed by the architects include preparation of schematic plans, studies, specifications, drawings and "such other services usually performed to the final completion of the building.”
The architects prepared the plans and specifications for the project. Based on those designs the building was erected and occupied by the school district.
In April of 1975 the school district "experienced considerable leaking” in the roof of the building and for the damage resulting therefrom the action herein was commenced in January of 1977 against the general contractor, the roofing contractor, the manufacturer of the roof, the insurance company which issued a 20-year bond on the roof, and the architects.
The only causes of action alleged against the architects are in strict products liability and breach of warranty. Without serving an answer, the defendant Crandell Associates, Archi *806 tects, now moves pursuant to CPLR 3211 (subd [a], pars [5], [7]) to dismiss the complaint as to it on the grounds that the action is barred by the applicable Statute of Limitations and that the complaint fails to state a cause of action.
Absent a guarantee of specific results, those engaged in the professions are held only to the standard generally followed in their particular profession and are required only to use due care in the performance of the professional services rendered (Carr v Lipshie, 8 AD2d 330, affd 9 NY2d 983; Major v Leary, 241 App Div 606). They may be held in malpractice for the negligent performance of their professional services but in this State no cause of action is known to the law against an architect for a breach of implied warranty (Sears Roebuck & Co. v Enco Assoc., 83 Misc 2d 552, 557-558, affd 54 AD2d 13, mot for lv to app granted 40 NY2d 806;* see Milau Assoc. v North Ave. Dev. Corp., 56 AD2d 587, 588).
As was pointed out in Schenectady Steel Co. v Trimpoli Gen. Constr. Co. (43 AD2d 234, affd 34 NY2d 939) the Uniform Commercial Code is not here applicable since the architect’s contract with the plaintiff was for professional services and did not involve the sale of goods. The warranties created by that legislation do not arise in plaintiff’s favor. (Aegis Prods. v Arriflex Corp. of Amer., 25 AD2d 639.)
The complaint in question alleges only that the architect "warranted that said architectural services and approval of said roof was of good and merchantable quality” (emphasis added). If in fact the architectural services, including the approval of the roof, were not within the standard generally followed in the profession, the plaintiff may have had a cause of action in malpractice, but other than the bald, unsupported allegations of the complaint, there is no showing by affidavit, oral argument or otherwise that the architects included in their contract a specific guarantee or warranty that the roof was of good and merchantable quality.
The complaint fails to allege a cause of action based on warranty. None exists with regard to architectural services. The defendant’s motion addressed to the 19th cause of action, which attempts to allege breach of warranty, is granted.
The second branch of the motion to dismiss is addressed to the 18th cause of action which alleges that the architects are *807 responsible in damages on the theory of strict products liability. No New York appellate authority dispositive of this contention has been submitted and none has been discovered by the court. It is necessary, therefore, to examine the nature of the cause of action and its applicability to the existing facts. Where appropriate, the court may be guided by decisions of the courts in our sister States dealing with similar problems.
The rule of strict products liability in New York was first enunciated in Codling v Paglia (32 NY2d 330). It was there held that, under given conditions, the manufacturer of a defective product is liable to any person injured or damaged in consequence of the defect without proof of negligence. Subsequent cases have extended that liability to suppliers of the defective product (Velez v Craine & Clark Lbr. Corp., 33 NY2d 117) and to vendors Mead v Warner Pruyn Div., Finch Pruyn Sales, 57 AD2d 340; but cf. Bichler v Willing, 58 AD2d 331).
It is clear from the Codling court’s review of the "historical catalogue of products liability cases” that the theory there articulated, although independent, had its roots in warranty. This genealogy is evident in the cases which followed Codling (see Velez v Craine & Clark Lbr. Corp., supra; Victorson v Bock Laundry Mach. Co., 37 NY2d 395; Micallef v Miehle Co., Div. of Miehle-Gross Dexter, 39 NY2d 376). Recently in Potsdam Welding & Mach. Co. v Neptune Microfloc (57 AD2d 993, 995) the Third Department recognized the relationship between warranty and strict products liability and held: "Plaintiffs third cause of action, for breach of implied warranty, based upon the same facts as the cause of action for strict products liability which we have sustained, is redundant.”
Similarly, in Ribley v Harsco Corp. (57 AD2d 228, 230), the Third Department held: "Whatever strict products liability might be when considering the question of negligence, it rests on an ultimate basis distinct from negligence. The cause of action arises not essentially from a lack of due concern by a defendant for others, but instead from a failure to so construct a particular device as not to cause injury by defective construction (design or manufacture) and then putting the defective device into the possession of others for a profit motive”.
Warranty being the basis for the doctrine of strict products liability, it follows that the cause of action will exist only where there would have been warranty implied (see Dickey v Lockport Prestress, 52 AD2d 1075), but as discussed above, there is no implied warranty in connection with professional *808 services. There is no cause of action in strict products liability for damages allegedly resulting from the negligent performance of architectural services. Nothing in Codling v Paglia (32 NY2d 330, supra) or its progeny holds or suggests to the contrary. This view accords with the case authority in other jurisdictions:
In Van Ornum v Otter Tail Power Co. (210 NW2d 188) the Supreme Court of North Dakota said (p 201): "An architect is not strictly liable for defective designs * * * Rather, an architect may be held liable for negligence only in failing to exercise the ordinary skill of his profession in designing a building.”
In Stuart v Crestview Mut. Water Co. (34 Cal App 3d 802, 811-812) the California Court of Appeals held: "We cannot, however, find any basis for holding the engineers on a strict liability theory. They rendered a professional service and are in no sense analogous to manufacturers who place products on the market and who are, therefore, in the best position to spread the cost of injuries resulting from defective products. [Citations omitted.] A relatively recent decision, Allied Properties v. John A. Blume & Associates, 25 Cal.App.3d 848, 855-856 [102 Cal.Rptr. 259] sums up the present state of our law with respect to the liability of professionals: '[T]he well settled rule in California is that where the primary objective of a transaction is to obtain services, the doctrines of implied warranty and strict liability do not apply [Citation omitted.] As originally stated in Gagne v. Bertran, 43 Cal.2d 481 [275 P.2d 15], former Chief Justice Traynor, in holding there was no strict implied warranty liability on the part of a test hole driller, stated at page 487: "He was not a seller of property who obligated himself as part of his bargain to convey property in the condition represented. The amount of his fee and the fact that he was paid by the hour also indicate that he was selling service and not insurance. Thus the general rule is applicable and those who sell their services for the guidance of others in their economic, financial, and personal affairs are not liable in the absence of negligence or intentional misconduct.”
" 'This rule had been consistently followed in this state with respect to professional services (Roberts v. Karr, 178 Cal.App.2d 535 [3 Cal.Rptr. 96] (surveyor); Gautier v General Telephone Co., 234 Cal.App.2d 302 [44 Cal.Rptr. 404] (communications services); Bonadiman-McCain, Inc. v. Snow, 183 *809 Cal.App.2d 58 [6 Cal.Rptr. 52] (engineer); Lindner v. Barlow, Davis & Wood, 210 Cal.App.2d 660 [27 Cal.Rptr. 101] (accountant); Pancoast v. Russell, 148 Cal.App.2d 909 [307 P.2d 719] (architect)).
" 'As the court further stated in Gagne, supra, at pages 489 and 490: "The services of experts are sought because of their special skill. They have a duty to exercise the ordinary skill and competence of members of their profession, and a failure to discharge that duty will subject them to liability for negligence. Those who hire such persons are not justified in expecting infallibility, but can expect only reasonable care and competence. They purchase service, not insurance. [Citations.]” ’ ”
In Swett v Gribaldo, Jones & Assoc. (40 Cal App 3d 573, 576-577) the California Court of Appeals decided:
"Appellant here was an engineering firm employed solely in an advisory capacity and paid by the hour. It had no interest in the property and did not participate in any way in its sale. We hold that, as in Gagne, it is not liable in the absence of negligence or intentional misconduct. * * *
"It is apparent from the brief as a whole that the real argument is that the soils engineer is strictly liable. As already pointed out, we cannot agree. The appellant is a professional, employed as were the engineers in Gagne, Allied Properties, and Crestview, to make tests and to give professional advice as to what they showed. Thus his duty was to conform to the standards of his profession * * * Unlike the developer, 'manufacturer’ or seller, it did not guarantee a result, and, absent some showing of negligence, is not liable.”
As attractive as is the temptation to make those rendering professional services subject to the doctrine of strict products liability and thus make available additional defendants to whom an innocent injured may look for damages, it is apparent that, at this stage in the development of that theory, the cause of action is available only against those engaged in the manufacture, distribution or sale of the offending product— those responsible for placing the defective product in the marketplace.
The plaintiff’s reliance on Matter of Paver & Wildfoerster [Catholic High School Assn.] (38 NY2d 669) and Naetzker v Brocton Cent. School Dist. (41 NY2d 929) is misplaced as is so clearly pointed out in Steiner v Wenning (53 AD2d 437) and Sears, Roebuck & Co. v Enco Assoc. (54 AD2d 13).
*810 The motion is granted on the ground that the complaint fails to state a cause of action against the moving defendant.

 The appeal was argued in the Court of Appeals October 3, 1977. As of the date of this decision no disposition of that appeal has been handed down.