OPINION OF THE COURT
Gerard E. Delaney, J.
By the within petitions the petitioners, Board of Education, Yonkers City School District, and the Yonkers Federation of Teachers by its president, Walter Tice, and Walter Tice, individually, seek in substance relief pursuant to CPLR 7803, a mandamus to compel the City Manager of the City of Yonkers and/or the Comptroller to transfer and credit to the account of the petitioner, Board of Education, the sum of $3,500,000, which sum was included in the annual budget preparation adopted by the City Council of Yonkers on June 30, 1987, which said amount was placed on the contingency budget line within the City of Yonkers budget designated as "the teachers salary increase”; and to adjudge and declare that the conditional limitation purportedly imposed by the Yonkers City Council on such preparation is illegal, null and void in that it constitutes an unlawful action by the City Council in violation of section 2576 of the Education Law of the State of New York; that the Yonkers Federation of Teachers and its president, Walter Tice, further seek in substance a mandamus enjoining the City Council from conditioning the disbursement of such funds by the Board of Education upon the execution of a collective bargaining agreement between the Yonkers Federation of Teachers and the city and/or its use in the attaining of any particular terms between the Board and the Yonkers Federation of Teachers.
The Board of Education of the City of Yonkers is a corporation duly organized and existing pursuant to section 2551 of the Education Law of the State of New York.
Respondent, Nicholas DeSantis, is the City Manager for the City of Yonkers.
Respondent, Rene Frayman, is the Comptroller for the City of Yonkers.
Respondent, City of Yonkers, is a municipal corporation duly organized and existing under the laws of the State of New York and the City Council of the City of Yonkers is the legislative body for the City of Yonkers.
*638 The Yonkers Federation of Teachers is a labor organization as defined by Civil Service Law § 204.
The following facts are not in dispute:
On June 30, 1987, the Yonkers City Council, by special ordinance, adopted the tax budget for the fiscal year commencing July 1, 1987, and terminating on June 30, 1988. The annual estimate of $305,938,223 was appropriated and consisted of personnel services, materials, supplies and expenses as set forth in the budget document for the respective departments of the City of Yonkers. This budget provided for a total tax levy in the amount of $116,541,152 which was the amount apparently deemed necessary by the City Manager of the City of Yonkers to be raised by the city to pay the total amount of debts and expenditures of the City of Yonkers.
Of the $305,938,223 total appropriation, the Yonkers City Council appropriated, by the same ordinance, $135,136,086 to the Board of Education for their operating expenses and debt service.
However, included in the budget approved on June 30, 1987, was the sum of $3,500,000 labeled as a "Contingency Account”. By Special Ordinance No. 95-1987, dated June 30, 1987, the Yonkers City Council passed a special ordinance approving the tax budget. On the same date, Resolution No. 141-1987 was passed wherein it was resolved, inter alia, that the "City Council requests the City Manager to amend his recommended operating budget for fiscal year commencing July 1, 1987, and terminating June 30, 1988, by including an appropriation in the sum of $3,500,000 on a contingency budget line within the City of Yonkers budget for 'teachers salary increase’, which sum is to be transferred to the Board of Education only upon receipt by the City of Yonkers of the fully executed and fully approved collective bargaining agreement with the Yonkers Federation of Teachers which shall be for a period of not less than 4 years with not more than a 4-!á percent salary increase for each year thereof.”
The court notes initially that the respondents initial allegations that such was not an "appropriation” to the Board of Education is without merit under the terms of its own Resolution No. 141-1987.
Such resolution made it patently clear that the contingency sum of $3,500,000 was itself set aside for "teachers salary increases” which such sum was to be transferred only upon the receipt of the collective bargaining agreement with the *639 Yonkers Federation of Teachers pursuant to the terms stated. It is clear to this court that the "Resolution” by which the $3,500,000 was set aside conditionally was itself approved for the tax budget by way of the Special Ordinance No. 95-1987. Indeed, in its statement of facts, respondent, Yonkers, states, inter alia, that "prior to the adoption of the budget ordinance the Yonkers City Council, by resolution, expressed the desire that the City Manager reserve $3,500,000. in a contingency account, in the general fund of the City’s operating budget. This sum could thereafter be transferred by appropriation to the Board of Education through the adoption of a special ordinance. Said $3,500,000. could then be appropriated by the City Council to the Board of Education” in the event of the hoped for collective bargaining agreement.
By the enactment of Special Ordinance No. 95-1987, the special "contingency budget” of the Resolution No. 141-1987 was made part and parcel of such appropriating ordinance, albeit on what was perceived by respondent, City of Yonkers, to be a "conditional” or "contingency” basis. The moneys were clearly and explicitly set aside for the Board of Education and the Yonkers Federation of Teachers on the condition precedent that the teachers union enter into the requested bargaining agreement.
It is also worthy of note that on June 30, 1987, the date of the adoption of the budget by the special ordinance and the resolution indicated above, the latest bargaining agreement between the petitioners, Yonkers Federation of Teachers, and the Board of Education expired. The Yonkers Federation of Teachers and the Board of Education had been negotiating for a new collective bargaining agreement since approximately February 1, 1987.
The first issue to be reached is whether or not, as claimed by all petitioners, such conditional limitation imposed by the City Council through its ordinance and resolution is illegal, null and void under section 2576 of the Education Law of the State of New York which, in substance, sets forth the powers of the local boards of education. Said section 2576 of the Education Law derives with many amendments therein from the Education Law of 1910 § 877 added by the Legislature in 1917 (L 1917, ch 786). While early case law held in substance that the local boards of education were departments of the local municipalities subject, therefore, to municipal control in matters not strictly educational (see, Matter of Hirshfield v Cook, 227 NY 297 [1919]), later views came to recognize that *640 the intent of the Legislature was to create independent boards of education under State control to avoid "political entanglements” and recognize further that while the municipality’s responsibility was restricted to the appropriation and allocation of moneys to operate such public schools, the board itself was solely responsible for determining how the city’s allocation should be expended. (See, Emerson v Buck, 230 NY 380 [1921].) In Fuhrmann v Graves (235 NY 77) it was then recognized that the board of education and the local municipalities were indeed separate corporate bodies, with the board of education being a subdivision of the State rather than the city.
Indeed it was recognized that, "If there be one public policy well-established in this State it is that public education shall be beyond control by municipalities and politics.” (Matter of Divisich v Marshall, 281 NY 170, 173.) It is further held that as long as the local boards of education stay within their budgets, they themselves have the sole right to determine teachers salaries inasmuch as to hold to the contrary would mean that, "Changes in personnel and in salaries, increases and decreases in the teaching and administrative staffs during a fiscal year would then be under the control of an officer or body to whom or which the Legislature has delegated no such authority or control. Such a rule would be contrary to the public policy of the State for many years.” (Board of Educ. v King, 280 App Div 458, 464.)
Section 2516 of the Education Law sets forth the budgetary relationship between the Board and the City of Yonkers. Subdivisions (1) and (2) of Education Law § 2576 requires the Board to prepare an itemized estimated budget for submission to the city. Subdivision (2) of section 2576 limits the city’s authority to simply increase, diminish or reject any item in the Board’s estimate prior to adoption by the city. Most important, in this court’s view, is that under Education Law § 2576 (2), which applies specifically to the City of Yonkers (and others), there is no specific authority for the city to condition the disbursement of such funds to the Board following their incorporation thereof. While this court is certainly well aware of the recent financial problems of the City of Yonkers, it is eminently clear that the "conditional” or "contingent” appropriation of $3,500,000 was attempted and its clear purpose was to act as a sword to subtly and not so subtly cajole the Board of Education to itself enter into a collective bargaining agreement with petitioner, Yonkers Federation of *641 Teachers, on terms as dictated by the City of Yonkers. This is impermissible.
"The City does not provide for or operate a public school system. The City does not employ teachers to staff schools or to teach children. Moreover, the City does not pay teachers salaries or supervise their employment. The City lacks any employment relationship and has never been a party to a collective bargaining agreement with the (Yonkers) Federation of Teachers.” (Mem of law, Yonkers Federation of Teachers, at 17.)
Under the State’s Civil Service Law (art 14; hereinafter Taylor Law), it is clear that the Yonkers Board of Education is the public employer of teachers and not the City of Yonkers. (Cf., Board of Educ. v Yonkers Fedn. of Teachers, 49 AD2d 753.) Petitioner, Yonkers Federation of Teachers, correctly argues, in this court’s opinion, that if the local board may not bring a city into the collective bargaining process because the city will then itself intrude upon the Board’s authority, then it follows that the city may not unilaterally interfere with the Board’s right to expend moneys for such teachers salary. By the express terms of section 204 (2) of the Taylor Law, the local board of education is exclusively empowered and obligated to bargain collectively with the Federation of Teachers. Since the City of Yonkers is not a public employer pursuant to section 204 (1) and (2), it does not possess any authority or obligation to negotiate with the Federation.
The court further finds under the rationale expressed above the same sort of contingent disbursements expressed by the city in its budget interferes with both the bargaining positions of the Yonkers Federation of Teachers and the Board of Education. If the local Board does not comply itself within the terms dictated by the resolution as adopted by the city, then the city contends those funds would themselves be forever lost and the Board may well be intimidated in its bargaining process. Accordingly, the. court views that the adoption of the resolution which was adopted on the same day of the budget and which was implicitly incorporated by reference was, therefore, made explicitly part of such budget ordinance adoption by the City of Yonkers; such, in the opinion of this court, interferes with the obligations of the petitioners, Yonkers Federation of Teachers and the Yonkers Board of Education, to bargain in good faith with each other and/or to at least be free of outside influence in such bargaining process.
*642 The court finds no merit to respondent’s arguments that the Second Class Cities Law precludes consideration of the instant matter for lack of an appropriate "ordinance” or appropriation, whereby its terms, as stated above, a resolution was part and parcel of the ordinance adopted that same date.
The court further finds no merits to respondent’s arguments that respondent, Yonkers Federation of Teachers, and its president, Walter Tice, and/or Walter Tice, individually, lack standing in the instant matter.
Respondent, City of Yonkers, further argues that if this court does declare the resolution of "contingency” passed on June 30, 1987, to be null and void that such funds would be, by their nature, forever lost to the local Board of Education in any event. This court disagrees.
It is clear that the City of Yonkers did, indeed, set aside $3,500,000 in anticipation of a new bargaining agreement between the Yonkers Federation of Teachers and the Yonkers Board of Education. Such in and of itself was not impermissible. What was impermissible were the conditions which the city sought to impose on the Board of Education in its bargaining process with the Yonkers Federation of Teachers. While the cases cited above recognize that the Board of Education is subject to, of course, the appropriations delegated to it by the local city, the Board itself certainly recognizes that any bargaining agreement it does make with the Yonkers Federation of Teachers cannot exceed its allocations so it is, by its nature, precluded from going beyond its explicit appropriation and the implicit/explicit appropriation of the $3,500,000 in the "contingency fund”.
Accordingly, the court makes the following declarations and determinations of law:
The court finds that so much of Resolution No. 141-1987 adopted June 30, 1987, by the City Council of the City of Yonkers which states in its "Therefore” clause of the resolution "which shall be for a period of not less than 4 years with not more than 4.5 percent salary increase for each year thereof’ is null, void and is hereby vacated by this court as being in violation of Education Law provisions cited above as well as the collective bargaining rights of petitioners under the Taylor Law and that the action of the Board in adopting such resolution with such language as cited above included therein was an action by the Board in excess of their jurisdiction, was affected by an error of law on their behalf and was *643 arbitrary and capricious. Such declaration and determination by this court does not, in the opinion of this court, free the City of Yonkers to use the $3,500,000 for any purposes for which they deem necessary inasmuch as the $3,500,000 set aside was specifically meant for the anticipated rise in teachers salaries for which such sum the Board will be limited by in its anticipated negotiations. Such does not mean that the respondent, City of Yonkers, is now free to now allocate such sums to other purposes. Such sums are clearly designed for teachers salary increases and shall upon the execution of the collective bargaining agreement, if any, between the petitioners, be utilized and freed for same by respondent.
The only condition which this court views as valid is that the city may maintain control of such $3,500,000 until if and when the local Board of Education and the Yonkers Federation of Teachers actually enter into the actual bargaining agreement at which point such sum in the amount necessary and up to such amount shall be deemed transferred and appropriated to the appropriate budgetary line of the Yonkers Board of Education.
To the extent then that the Yonkers Federation of Teachers also seeks a judgment to enjoin and restrain the City of Yonkers from conditioning the disbursement of the budgetary funds upon such condition, such is granted accordingly on the rulings of this court made above. No further order should be necessary from this court to prevent the City of Yonkers from interfering in any way further with the collective bargaining process between the Board and the Federation of Teachers.
Petition sustained to the extent indicated above and judgment for petitioners accordingly.