Diane BARNETT, Individually and as Administratrix of the Estate of Richard Barnett, M.D., Plaintiff,

v.

The CITY OF YONKERS and The Board of Education of the City of Yonkers, United States Gypsum Company, U.S. Mineral Products, The Celotex Corporation, Stuart Mueller Associates, Inc., and Eli Rabineau, Defendants.

No. 87 Civ. 5401 (JFK).

United States District Court, S.D. New York.

Feb. 8, 1990.

Levy Phillips & Konigsberg, New York City (Stanley J. Levy and Janet M. Delohery, of counsel), for plaintiff.

J. Radley Herold, Corp. Counsel, Yonkers, N.Y. (Michell H. Klemperer, of counsel), for defendant City of Yonkers.

Anderson, Banks, Moore, Curran & Hollis, Mount Kisco, N.Y. (James P. Drohan, of counsel), for defendant Bd. of Educ. of City of Yonkers.

Anderson Kill Olick & Oshinsky, New York City (Judith A. Yavitz and Frank S. Occhipinti, of counsel), for defendant U.S. Gypsum Co.

Walker, Walker & Kapiloff, New York City (Edward N. Walker and Daniel S. Wohlfarth, of counsel), for defendant Eli Rabineau.

Bernstein, Weiss, Coplan, Weinstein & Lake, New York City (Norman Coplan, of counsel), for amici curiae The American Institute of Architects and The N.Y. State Ass'n of Architects, Inc.

Norman H. Gross, Counsel to the N.Y. State School Boards Ass'n, Albany, N.Y. (Henry F. Sobota, of counsel), for amicus curiae N.Y. State School Boards Ass'n.

## OPINION AND ORDER

KEENAN, District Judge.

### BACKGROUND

Plaintiff in this wrongful death and loss of services, society and consortium action alleges that plaintiff's decedent's death was caused by exposure to friable asbestos while decedent was a student at Walt Whitman Junior High School in Yonkers (the "school") between 1967 and 1970. This case differs from the typical asbestos-related lawsuit in that plaintiff has not sued asbestos millers, manufacturers or distributors. Here, plaintiff has named the City of Yonkers and its Board of Education (the "Board") as defendants, claiming that these municipal entities failed to exercise reasonable care in learning of the hazards of asbestos when the school was constructed and while it was maintained.

On September 30, 1988 Judge Charles P. Sifton of the Eastern District of New York, as supervisor of the Joint Southern/Eastern District Asbestos Litigation, granted the Board permission to join additional parties as defendants pursuant to Fed.R.Civ.P. 19(a). The United States Gypsum Company ("Gypsum") and Eli Rabineau, an architect involved in the school's construction, are among the additional defendants. The Board has filed a cross-claim for contribution and/or indemnification against each of the additional defendants. The lawsuit is presently before this Court on several motions. The City of Yonkers and the Board have moved for summary judgment pursuant to Fed.R.Civ.P. 56. Defendant Gypsum has cross-moved pursuant to Fed.R.Civ.P. 12(b)(2) and 56 for dismissal of the Board's cross-claim and pursuant to Fed.R.Civ.P. 11 for sanctions against the Board. Defendant Rabineau also cross-moves for summary judgment against the Board.

### FACTS

The Walt Whitman Junior High School in Yonkers was built in 1959 and remained open until 1982 when the Westchester Commissioner of Health ordered the school's closing because the asbestos health hazard had become critical. Plaintiff's decedent attended the school between 1967 and 1970. Plaintiff maintains that by 1967 asbestos which had been sprayed-on portions of the school's ceilings began to fall in flakes and chunks in the classrooms. Plaintiff contends that decedent's exposure to asbestos at the school caused him to contract mesothelioma, an always-fatal cancer of the lining of the lung, which caused decedent's death in 1986.

Although the parties are unable to locate a copy of the contract between Rabineau and the Board relative to the design and construction of the school, Rabineau recalls that he was commissioned by the Board to design the school in July, 1956. *See* Rabineau Aff., ¶ 5. It is undisputed that the plans and specifications developed by Rabineau for the school called for the use of sprayed-on asbestos. Rabineau asserts that, to the best of his recollection, sprayed-on asbestos was applied only "to the cafeteria (dining area) and certain absorptive portions of the ceiling in the auditorium." *Id.* at ¶ 8.

Rabineau submits that the use of asbestos-containing products in the construction of schools was the generally accepted practice of the architectural profession in the late 1950's and indeed was not even questioned until the mid–1970's. Moreover, all plans and specifications for school facilities in New York State must be approved by the Bureau of Facilities Planning of the New York State Education Department. The Bureau of Facilities Planning approved the use of sprayed-on asbestos in schools until 1979.

Guided by Rabineau's plans, construction of the school commenced in 1958 and was completed in time for the commencement of the Fall, 1959 term. Upon issuing a certificate of completion, Rabineau's obligations under his contract with the Board were satisfied. The contract did not provide for any continuing duty to maintain the school on Rabineau's part, and no express warranties were included in the contract.

A significant portion of the parties' submissions is devoted to establishing the progression of knowledge of the risks presented by exposure to asbestos. The Board relies heavily on legislative findings and governmental agency reports to buttress its contention that it could not reasonably have known of the dangers of asbestos-exposure to students in asbestos-containing schools through 1970.

It is undisputed that no federal or state safety standard banning or regulating the use of asbestos in buildings was in effect before 1973, when the federal Environmental Protection Agency ("EPA") issued a ban on the use of sprayed-on asbestos materials. See 38 Fed.Reg. 8,826 (1973). In 1979, New York State introduced asbestos legislation in the School Asbestos Safety Act of 1979. The legislative findings and purposes statement which accompanies the statute notes that:

"substantial amounts of asbestos materials were used throughout school buildings during the period from nineteen hundred forty-six to nineteen hundred seventy-two for fireproofing, soundproofing, decorative and other purposes."

New York State Education Law, § 431(1)(a) [McKinney's 1988].

Similarly, in enacting the Asbestos School Hazard Detection and Control Act, 20 U.S.C. §§ 3601 et seq. ("Asbestos Act"), Congress found that:

"[d]uring the period 1946 to 1972, asbestos materials, particularly in sprayed form, were used extensively in the construction and renovation of school buildings for fireproofing, insulation, acoustical, and decorative purposes."

S.Rep. No. 710, 96th Cong., 2d Sess. 3, reprinted in 1980 U.S.Code Cong. & Admin.News 1426, 1428.

In the Asbestos Act, Congress directed the Attorney General of the United States to ascertain the feasibility of recovering "from any person determined" to be liable the costs of detecting, removing, and replacing asbestos materials from school buildings. 20 U.S.C. § 3607(b). In accordance with this mandate, the Attorney General issued the "Attorney General's Asbestos Liability Report to the Congress" in 1981 ("Attorney General's Report"). The Attorney General's background findings regarding the widespread use of asbestos in schools "through the early 1970's" is consistent with the above findings the Board adduces. See Attorney General's Report at p. 9. The Report also notes that while the EPA banned the use of sprayed-on asbestos-containing materials with greater than 1% asbestos composition for insulation and fire-proofing purposes in 1973, it did not expand the ban to encompass spraying for decorative purposes until 1978.

The uncontroverted testimony of Board officials establishes that the Board first received actual notice of the hazards posed by friable asbestos from the New York State Education Department between April 1, 1976 and January, 1977. See Grosso Aff., Garofalo Aff. Moreover, the Chief of the New York State Education Department's Bureau of Facilities Planning avers that it was only "immediately prior to February '77 that" the Department notified school districts of the potential dangers of asbestos in school buildings.

The facts pertaining to the issue of Rabineau's actual notice of the hazards associated with asbestos are concisely presented in the uncontradicted affidavit of Frederic G. Wiedersum:

> "During the period 1955–1973 the potential hazard to those occupying buildings wherein asbestos containing materials were incorporated was simply unknown to either architects or engineers. Even in the early 1970's, when the potential health hazard among asbestos industry workers and installers became known, risk to the public at large was simply unforeseen."

Wiedersum Aff. ¶ 4. In its task of establishing Rabineau's constructive knowledge, the Board is placed in the troublesome position of arguing that while it could not reasonably have been aware of the hazards of asbestos during the relevant period, Rabineau could have. Not surprisingly, the Board does not pursue this argument with much vigor.

In an effort to create a triable issue of fact with respect to the constructive notice of defendants, plaintiff adduces twelve newspaper articles and two magazine articles which she asserts demonstrate the availability of information concerning the risks of asbestos during the relevant period. Of the fourteen articles submitted by plaintiff, three were published after the decedent graduated from the school, seven were published while he was enrolled at the school, and none was published before or while the school was being built. See Pl't'ff's Exh. C. Each of the articles appears in a non-technical, generally circulated publication such as *The New York Times* in 1964, *The Wall Street Journal* in 1968, and *The New Yorker* also in 1968. The articles each suggest a link between asbestos-exposure and cancer, frequently mesothelioma. Although certain articles discuss only the risks of occupational exposure to asbestos, others plainly address the potential hazards of exposure presented to the general public. *See, e.g.* Brody, *Asbestos Dust Called a Hazard to at Least One–Fourth of U.S.*, N.Y. Times, March 2, 1966, at 33, col. 2; Brodeur, *A Reporter at Large: The Magic Mineral*, The New Yorker, Oct. 12, 1968, at 117, 138–39.

Plaintiff also adverts to the deposition testimony of Dr. Joseph H. Feinberg, a classmate of the decedent at Walt Whitman Junior High School. Dr. Feinberg testified that while a student at the school he saw in a classroom "a piece of material and some powder-like material, smaller powder, and then less fine debris on a desk and a couple of other places." Feinberg Dep. at 27. Decedent's mother, who was president of the school's PTA while decedent was in attendance, recalls a large hole in the "ceiling outside the auditorium in the main corridor" through which water would drip on rainy days. Barnett Dep. at 55, 80. Although Mrs. Barnett is unable to identify asbestos, in 1986 she wrote to her congressman and informed him that she recalled the hole in the school's ceiling and that she believed asbestos had been in the ceiling. *See id.* at 80–81.

The facts pertaining to Gypsum's motions to dismiss and for summary judgment are sufficiently distinct from the facts discussed above to merit separate treatment. Gypsum's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2) is premised upon the assertion that it has never been served with process in this action. In September, 1988 Judge Sifton orally granted the Board's motion under Fed.R.Civ.P. 19(a) to join Gypsum as an additional defendant.[1] The Board promptly sought to assert a cross-claim for indemnity and/or contribution against Gypsum. The Board, however, did not serve a summons and cross-claim upon Gypsum. Rather, the Board mailed a summons and cross-claim, naming "National Gypsum Company" as the defendant, to Gypsum's counsel. The Board has never served Gypsum with the summons and cross-claim. Gypsum's counsel avers that it is not authorized to accept service of process on Gypsum's behalf. *See* Occhipinti Aff. ¶ 3 n. 1. The Court also observes that leave to join National Gypsum Company was neither requested by the Board nor

---

[1] Plaintiff has not asserted a claim against Gypsum or any other manufacturing defendant.

granted by Judge Sifton. *See* Gypsum Exh. B.

Even assuming the Board is able to clear this jurisdictional hurdle, Gypsum contends summary judgment is appropriate because the allegation that decedent was exposed to Gypsum's asbestos-containing product is not supported by reasonable inferences drawn from the facts. The Board's chemicals expert testified that samples of plaster ceiling material extracted from the school were "consistent with" Spraydon, a product manufactured by Gypsum. *See* Curran Aff. ¶ 5 (Gypsum Exh. B). The building specifications of the school, however, did not call for the use of Spraydon in the construction of the school. Rather, the specifications contemplated the use of " 'Asbestospray' as manufactured by the Asbestospray Corp. or Sprayon Insulation and Acoustics, Inc." [2] Gypsum Exh. D. The Yonkers Supervisor of Buildings and Grounds testified that to his knowledge the ceilings in the school were constructed according to the specifications. *See* Flower Dep. at 79–80.

Gypsum never manufactured Asbestospray, the asbestos-containing acoustical ceiling plaster listed in the specifications. Beginning in 1966, seven years after the school's completion, Gypsum manufactured two forms of a fireproofing product called Spraydon pursuant to specifications provided by Sprayon Research Corp., which may be a successor corporation to Sprayon Insulation and Acoustics, Inc. No party is able to state with certainty whether Sprayon Research Corp. is a successor corporation to Sprayon Insulation and Acoustics, Inc. Springing from this uncertain factual platform, the Board makes the bald assertion that Gypsum in turn may be a successor corporation to Sprayon Research Corp.

Gypsum unequivocally denies ever having any corporate relationship with any Sprayon entity:

"(i) [Gypsum] never purchased or acquired the assets of Sprayon Insulation and Acoustics, Inc., or Sprayon Research Corporation; (ii) [Gypsum] never purchased the stock of Sprayon Insulation and Acoustics, Inc. or Sprayon Research Corporation; (iii) [Gypsum] never took over or operated a manufacturing facility owed or operated by Sprayon Insulation and Acoustics, Inc. or Sprayon Research Corporation; and (iv) [Gypsum] never hired management level or manufacturing employees of Sprayon Insulation and Acoustics, Inc. or Sprayon Research Corporation."

Bowman Aff. ¶ 3.

As noted above, Gypsum did not manufacture Spraydon at the time of the school's construction. Gypsum did, however, manufacture Audicote, a non-fireproof form of acoustical plaster, during the period of the school's construction. Audicote, like Spraydon, was capable of being applied by spray. While Spraydon's composition included significant amounts of mineral wool, Audicote contained no mineral wool. Thus, the Board does not contend that Audicote was "consistent with" the samples of ceiling plaster it removed from the school.

## DISCUSSION

In deciding a motion for summary judgment, the court must examine the record in the light most favorable to the nonmoving party. *Keeley v. Citibank, N.A.*, 711 F.Supp. 157, 159 (S.D.N.Y.1989). A moving party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R. Civ.P. 56(c). If the moving party does not bear the burden of proof, he must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). This burden is discharged when the moving party identifies those portions of the record which demonstrate the absence of material factual issues. *Id.* at 323, 106 S.Ct. at 2553.

---

**2.** Judge Sifton denied as untimely the Board's motion for leave to implead Asbestospray Corp., Sprayon Insulation and Acoustics, Inc. and

Spraycraft Corp. (Asbestospray Corp.'s successor).

Once the moving party meets these requirements, the burden shifts to the party opposing the motion, who "must set forth *specific facts* showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986) (emphasis added). It is not sufficient for the party opposing a properly supported summary judgment motion to rest on denials derived from his pleading. *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511. Guided by these principles, the Court will examine the various summary judgment motions.

### A. *The City of Yonkers' Motion*

■ The City of Yonkers premises its motion upon the assertion that it has no legal duty to operate, maintain or control any public school located in Yonkers. Indeed, the City of Yonkers' role in public education is restricted to the appropriation of funding for the operation of the schools. *See Divisich v. Marshall*, 281 N.Y. 170, 22 N.E.2d 327 (1939); *Emerson v. Buck*, 230 N.Y. 380, 130 N.E. 584 (1921). The Board of Education, which is charged with the responsibility of operating, maintaining and controlling the schools, *see* New York Education Law § 2551, directs how the funds are expended. *See Divisich*, 281 N.Y. at 173, 22 N.E.2d at 328; *Board of Educ. of the Yonkers School Dist. v. DeSantis*, 136 Misc.2d 636, 640, 518 N.Y.S.2d 1014, 1016–17 (Sup.Ct.West.Co.), *aff'd*, 133 A.D.2d 402, 519 N.Y.S.2d 395 (2d Dep't 1987).

The Education Law requires that legal title to real property purchased by the Board of Education be held in the City's name. *See* New York Education Law § 2557. The City, however, must hold the property in trust for the Board. *See id.* The Education Law further provides that "no [school] building shall be constructed, remodelled, or enlarged until the plans and specifications therefore are approved *by the Board of Education*." *Id.* at § 2556(4) (emphasis added). Thus, although the City holds bare legal title to the school, there is

no contention that it directly participated in any of the actions or decisions that gave rise to this lawsuit.

Any liability of the City of Yonkers, then, must arise from its status as an owner out of possession. New York law provides that an owner out of possession with no contractual or statutory obligation to maintain or control the premises is not liable in tort to third persons injured as a result of a dangerous condition which arises on the premises after the transfer of possession and control. *See Guzman v. Hazen Plaza Housing Development Fund Co.*, 69 N.Y.2d 559, 509 N.E.2d 51, 516 N.Y.S.2d 451 (1987); *Putnam v. Stout*, 38 N.Y.2d 607, 345 N.E.2d 319, 381 N.Y.S.2d 848 (1976); *Hecht v. Vanderbilt Associates*, 141 A.D.2d 696, 529 N.Y.S.2d 818 (2d Dep't 1988), *app. denied*, 73 N.Y.2d 918, 536 N.E.2d 630, 539 N.Y.S.2d 301 (1989).

The record is barren of even a suggestion that the City of Yonkers had an obligation or even an ability to exercise any control over the school. The City's statutory role in the school's affairs begins and ends with the appropriation and allocation of funds to operate the school. The New York Education Law places the control and management of the school exclusively within the province of the Board of Education. *See, e.g.*, New York Education Law §§ 2551, 2556; *Divisich v. Marshall*, 281 N.Y. 170, 22 N.E.2d 327 (1939); *Board of Education of the Yonkers School Dist. v. DeSantis*, 136 Misc.2d 636, 518 N.Y.S.2d 1014 (Sup.Ct.West.Co.), *aff'd*, 133 A.D.2d 402, 519 N.Y.S.2d 395 (2d Dep't 1987). Accordingly, the City of Yonkers' motion for summary judgment is granted.

### B. *The Board's Motion for Summary Judgment*

■ The Second Circuit Court of Appeals has observed that "public school officials have a parens patriae interest in protecting the well-being of their students." *Kampmeier v. Nyquist*, 553 F.2d 296, 300 (2d Cir.1977). *Accord Toure v. Board of Educ. of the City of New York*, 127 A.D.2d 759, 759, 512 N.Y.S.2d 150, 151 (2d Dep't) (Board has "the same duty towards the students in its care as [is] owed by a rea-

sonably prudent parent"), *app. denied*, 70 N.Y.2d 602, 512 N.E.2d 550, 518 N.Y.S.2d 1024 (1987). Nevertheless, the liability of school boards in New York for negligence "is determined by the same rules and principles which govern the liability of private landowners." *Stevens v. Central School Dist. No. 1 of the Town of Ramapo*, 25 A.D.2d 871, 871, 270 N.Y.S.2d 23, 26 (2d Dep't 1966), *aff'd*, 21 N.Y.2d 780, 235 N.E.2d 448, 288 N.Y.S.2d 475 (1968).

In order for a landowner to be liable for a defective condition on his premises, "he must have actual or constructive notice of the condition for such a period of time that, in the exercise of reasonable care, he should have corrected it." *Fischer v. Battery B'ld'ng Maintenance Co.*, 135 A.D.2d 378, 379, 521 N.Y.S.2d 678, 679 (1st Dep't 1987) (citation omitted). Plaintiff does not argue that the Board had actual notice of the dangerous asbestos-related condition at the school during the relevant period. Indeed, the unrebutted evidence adduced by the Board indicates that the Board was not aware of the hazards posed by the friable asbestos until 1976 or 1977. *See* Grosso Aff., Garofalo Aff. Therefore, it is incumbent upon plaintiff to raise a triable issue of fact regarding the Board's constructive notice.

"To constitute constructive notice, a defect must be . . . apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." *Gordon v. American Museum of Natural History*, 67 N.Y.2d 836, 837, 492 N.E.2d 774, 775, 501 N.Y.S.2d 646, 647 (1986). *See also Lewis v. Metropolitan Transportation Authority*, 99 A.D.2d 246, 251, 472 N.Y. S.2d 368, 372 (1st Dep't), *aff'd*, 64 N.Y.2d 670, 474 N.E.2d 612, 485 N.Y.S.2d 252 (1984) ("condition [must have] existed for a sufficient period to afford [landowner], in the exercise of reasonable care, an opportunity to discover and correct it"]. *Cf. Basso v. Miller*, 40 N.Y.2d 233, 241, 352 N.E.2d 868, 872, 386 N.Y.S.2d 564, 568 (1976) (" 'A landowner must act as a reasonable man in maintaining his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk.' ") (citation omitted).

The Board strenuously argues that because no federal or state safety standard banning or otherwise regulating the use of asbestos materials in the building was in place in the 1950's and 1960's, and because the use of sprayed-on asbestos was prevalent in school building construction during the relevant period, it could not reasonably have known of the dangers associated with asbestos. In response, plaintiff adverts to fourteen articles published in newspapers and magazines of general circulation. The three articles which were published after decedent's graduation have no probative value on the issue of the Board's constructive knowledge. The remaining eleven, published before or during decedent's three years at the school, however, create an issue of fact sufficient to defeat the Board's motion.

Each of the eleven articles discusses a link between asbestos and the development of cancer in individuals exposed to asbestos. As the Board points out, several of the articles seem to confine the potential risks to the few individuals occupationally exposed to asbestos for substantial periods. Plaintiff's assemblage of articles, however, does include references to the hazards of asbestos presented to the public at large. *See, e.g., Dangerous Dust?*, Scientific America, Dec., 1964, at 64; Brody, *Asbestos Dust Called a Hazard to at Least One-Fourth of U.S.*, N.Y. Times, March 2, 1966, at 33, col. 2; Brodeur, *A Reporter at Large: The Magic Mineral*, The New Yorker, Oct. 12, 1968, at 117, 138–39. Moreover, the testimony of Dr. Feinberg and Mrs. Barnett suggest that portions of the school's ceilings had deteriorated to an alarming degree while decedent was a student. Because the Board knew that portions of these crumbling ceilings contained asbestos, a factual issue exists regarding whether the availability of literature discussing the hazards of exposure to asbestos is sufficient to charge the Board with constructive knowledge. *Cf. Toure v. Board of Educ. of the City of New York*,

127 A.D.2d 759, 759, 512 N.Y.S.2d 150, 151 (2d Dep't) ("issue of whether reasonable care was exercised is generally a question for the jury"), *app. denied,* 70 N.Y.2d 602, 512 N.E.2d 550, 518 N.Y.S.2d 1024 (1987). The Board's motion for summary judgment is denied.

### C. *Eli Rabineau's Motion for Summary Judgment*

■ The Board has asserted a cross-claim against Rabineau, the architect of the school, for contribution and/or indemnity. Although the cross-claim against Rabineau speaks in terms of negligence, *see* Cross-claim of Board, ¶ 23, the Board has suggested that it might rely on theories of breach of an implied warranty or strict liability as well. This it cannot do. New York law is crystal clear that in service-oriented contracts, such as agreements to render architectural services, no action in breach of implied warranty or strict product liability will lie for the negligent performance of professional services. *See Stafford v. International Harvester Co.,* 668 F.2d 142, 146 (2d Cir.1981); *Milau Associates, Inc. v. North Avenue Development Corp., Inc.,* 42 N.Y.2d 482, 486, 368 N.E.2d 1247, 1250, 398 N.Y.S.2d 882, 885 (1977); *Queensbury Union Free School Dist. v. Jim Walter Corp.,* 91 Misc.2d 804, 806, 398 N.Y.S.2d 832, 833 (Sup.Ct. Warren Co.1977). Absent an express warranty of specific results, an architect may only be held liable "in malpractice for the negligent performance of [his] professional services." *Queensbury Union,* 91 Misc.2d at 806, 398 N.Y.S.2d at 833.

■ Unlike the Board, which had an on-going responsibility to maintain the school in a safe condition, Rabineau's duty to exercise reasonable care in rendering his services ended in 1959 with the completion of his performance. *See id.; Bayne v. Everham,* 197 Mich. 181, 163 N.W. 1002, 1008 (1917). Thus, Rabineau's performance must be examined under the standards of the architectural profession in 1959.

Like other professionals, the architect must ply his trade with the degree of care and competence generally expected of a reasonably skilled member of his profession in the same geographical area at the same time. *See* 76 N.Y.Jur.2d, *Malpractice,* §§ 3, 21, 27; *Sears, Roebuck & Co. v. Enco Associates,* 43 N.Y.2d 389, 396, 372 N.E.2d 555, 558, 401 N.Y.S.2d 767, 771 (1977); *Queensbury Union,* 91 Misc.2d at 808, 398 N.Y.S.2d at 834. The record lacks any evidence that the use of asbestos in school building construction was inconsistent with the generally accepted practices of the architectural profession through 1959. *See* F. Wiedersum Aff. ¶ 405; Baltzel Dep. at pp. 36–38. Indeed, the earliest of the articles plaintiff submits in opposition to the Board's motion was published in late 1964. "Whether hindsight reveals that greater precautions could have been taken to avoid the harm that eventuated is irrelevant if the injury could not reasonably have been foreseen at the moment the defendant engaged in the activity which later proves harmful." *Danielenko v. Kinney Rent-a-Car Inc.,* 57 N.Y.2d 198, 204, 441 N.E.2d 1073, 1075, 455 N.Y.S.2d 555, 557 (1982). Rabineau could not reasonably have been expected to know of the deleterious effects of asbestos between 1956 and 1959. Summary judgment in his favor is granted.

### D. *Gypsum's Motions to Dismiss and for Summary Judgment*

■ Having been granted leave to join Gypsum as an additional defendant, the Board mailed a summons and cross-claim which named "National Gypsum Company" as a defendant to counsel for Gypsum. National Gypsum Company is a separate and distinct entity from Gypsum, and Gypsum's counsel is not authorized to accept process in its behalf. Thus, Gypsum has not yet been served and moves to dismiss the cross-claim against it pursuant to Fed. R.Civ.P. 12(b)(2) for lack of personal jurisdiction.

Fed.R.Civ.P. 4(d)(3) provides that service of process be effected upon a corporation by personally serving a corporate officer, managing or general agent.

Absent proper service, this Court is without jurisdiction over an additional party. *See Apple v. Jewish Hosp. and Medical Center,* 829 F.2d 326, 332 (2d Cir.1987); *Martin v. New York State Dep't of Mental*

*Hygiene,* 588 F.2d 371, 372 (2d Cir.1978). Absent authorization by the party to be served, service upon the party's attorney does not constitute valid service. *See Shelley v. Bayou Metals,* 561 F.2d 1209, 1210 (5th Cir.1977); *Christensson v. Hogdal,* 199 F.2d 402, 404 (D.C.Cir.1952). The Board's failure to properly serve Gypsum pursuant to Fed.R.Civ.P. 4(d)(3) mandates dismissal of the cross-claim against Gypsum.

Moreover, the Court notes that the Board's failure to serve the summons upon Gypsum within 120 days of the issuance of the summons mandates dismissal of the cross-claim pursuant to Fed.R.Civ.P. 4(j). *See Cool v. Police Department of the City of Yonkers,* 40 Fed.R.Serv.2d 857 (S.D.N.Y. 1984). A Rule 4(j) dismissal, however, is "without prejudice" to refiling. Accordingly, the Board is directed to serve upon Gypsum an amended cross-claim, if it intends to do so, within 20 days of the filing of this Opinion and Order.

Although Gypsum presents several fairly persuasive arguments in support of its summary judgment motion, its request for summary disposition of the Board's cross-claim must be denied. As explained above, this Court lacks jurisdiction over Gypsum. "In the absence of proper service, the District Court [has] no *in personam* jurisdiction over [Gypsum] to adjudicate the cross claim against [it]." *American Telephone and Telegraph Co. v. Merry,* 592 F.2d 118, 126 (2d Cir.1979).

### CONCLUSION

For the reasons discussed above, the City of Yonkers and Rabineau's motions for summary judgment are granted. The Board's motion for summary judgment is denied. Gypsum's motion to dismiss for lack of personal jurisdiction is granted, but its motions for summary judgment and Rule 11 sanctions are denied.

SO ORDERED.