[634 NYS2d 904]

Board of Education for the City School District of the City of Buffalo, Respondent, v Buffalo Teachers Federation, Inc., Appellant.

Fourth Department, November 15, 1995

APPEARANCES OF COUNSEL

*Robert W. Klingensmith,* Buffalo, and *Bredhoff & Kaiser,* Washington, D.C. *(Andrew D. Roth* and *Robert H. Chanin* of counsel), for appellant.

*Hodgson & Russ,* Buffalo *(Karl Kristoff* of counsel), for respondent.

### OPINION OF THE COURT

DENMAN, P. J.

Defendant, Buffalo Teachers Federation, Inc. (BTF), appeals from a judgment declaring that plaintiff, the Board of Education for the City School District of the City of Buffalo (Board), "has no obligation to legislatively approve or implement by funding the Tentative Agreement reached on September 1, 1990" between the parties. Supreme Court also dismissed BTF's counterclaims and denied BTF's cross motion for summary judgment.

This appeal is the second time the parties have appeared before us concerning a dispute over the validity of a collective bargaining agreement. In the earlier proceeding *(Matter of Board of Educ. v Buffalo Teachers Fedn.,* 191 AD2d 985, *lv denied* 82 NY2d 656), we confirmed the determination of the Public Employment Relations Board (PERB) that the Board had violated section 209-a of the Civil Service Law. We also dismissed that part of the action that sought a declaratory judgment, concluding that it was premature. Subsequently, the collective bargaining agreement was "executed" and the Board

commenced this action seeking a judgment declaring that the Board could not be compelled "to legislatively approve * * * [or] to implement by funding the [agreement]".

The issue that the parties have raised is one of first impression and requires us to construe sections 201 (12) and 204-a (1) of the Civil Service Law. For the reasons that follow, we agree with Supreme Court that the Board retained the authority to legislatively approve the collective bargaining agreement.

## HISTORY OF THE CASE

### The 1991 PERB Determination

A collective bargaining agreement between the parties expired on June 30, 1990. In advance of the expiration, the parties entered into negotiations, with Joseph Carney as the chief negotiator for the Board and Philip Rumore, the President of BTF, as its chief negotiator. Albert Thompson, the Superintendent for the City School District of the City of Buffalo (District), became involved in the negotiations in April or May 1990. The negotiations proved fruitless, despite the intervention of a factfinder and a special impasse panel. Thompson and Rumore met on August 29 and negotiated a tentative agreement, which was reduced to writing and initialed on September 1, 1990 (the agreement). The agreement was for four years and provided, *inter alia,* for a total 32% increase in the teachers' salary schedule. The membership of the BTF ratified the agreement on September 3, 1990.

In response to a question from Board member David Kelly, Carney provided him with a document identifying "reasons for disapproval" of the agreement. Carney also sent a copy of that document to Board member Jaeger. Subsequently, on September 26, 1990, the Board rejected the agreement by a 5 to 4 vote, with Kelly and Jaeger voting against it.

BTF filed an improper practice charge with PERB alleging that members of the negotiating team failed to support ratification of the agreement. Following a hearing, the Director of PERB issued an interim decision on February 25, 1991, finding, *inter alia,* that the conduct of Carney in meeting with Kelly and preparing a document justifying the Board's disapproval of the agreement, and subsequently giving the document to Jaeger, constituted a violation of Carney's obligation to support the agreement. As a remedy, the Director ordered the Board to execute a collective bargaining agreement embodying the agreement reached on September 1. Both parties took exceptions to the interim decision.

PERB issued its decision and order on September 23, 1991. In pertinent part, PERB determined that the Director's finding regarding Carney's conduct was supported by the record, that is, that Carney "intended to undermine support for the tentative contract and likely caused that result". With respect to the remedy, PERB rejected BTF's request to order specific performance of the contract. Rather, PERB stated as follows: "The right and duty of a legislative body of a public employer to approve legislatively certain terms of an agreement arises by statute and exists independently from any action by the negotiators, who represent the executive branch of government in which the right and duty to bargain is lodged. Unlike ratification, however, legislative approval is required only for certain terms of an agreement. Moreover, legislative approval is a right that belongs to the legislative body, not to the negotiators."

## CPLR Article 78 Petition/Declaratory Judgment Action

The Board commenced a proceeding seeking to annul PERB's determination that Carney committed an unfair labor practice. The Board further sought a declaration that, if it was required to sign a document embodying the terms of the September 1 agreement, it was not obligated to take legislative action to implement the agreement by providing the additional funds required under the terms of the agreement. BTF raised several counterclaims and cross claims, alleging that PERB erred in failing to order implementation of the agreement. BTF argued further that the Board had waived its right to legislatively approve the agreement or, in the alternative, had constructively approved it. BTF sought a declaration to that effect. Supreme Court transferred the entire proceeding pursuant to CPLR 7804 (g).

We agreed with PERB that there was sufficient evidence to support the finding of an unfair labor practice and rejected various procedural arguments raised by the Board *(Matter of Board of Educ. v Buffalo Teachers Fedn.,* 191 AD2d 985, *lv denied* 82 NY2d 656, *supra)*. We also concluded that "the issues raised in the declaratory judgment action are not related to our review of PERB's determination. For that reason, we dismiss the action for a declaratory judgment as premature" *(Matter of Board of Educ. v Buffalo Teachers Fedn., supra,* at 986). Finally, we concluded that the record was not "developed regarding the issue of legislative approval", citing sections 201 (12) and 204-a (1) of the Civil Service Law *(Matter of Board of Educ. v Buffalo Teachers Fedn., supra,* at 986).

Within a week of the denial of the Board's motion for leave to appeal to the Court of Appeals, Thompson signed the agreement and the Board commenced this action.

## THE CURRENT DECLARATORY JUDGMENT ACTION

In its complaint, the Board asserted that it would "neither legislatively approve nor implement by funding the Tentative Agreement", that BTF was barred by the doctrines of res judicata, collateral estoppel, and law of the case from raising the issue of legislative approval, and that "any order which deprives or dispenses with legislative approval of a collectively negotiated agreement would violate Civil Service Law §§ 201 (12), 204-a (1), and 205 (5) (d) and would also violate the New York State Constitution and public policy of this State". In its answer, BTF raised two counterclaims, asserting that legislative approval would have been forthcoming "but for" the PERB violation. BTF sought a declaration that, "when the September 1, 1990 Agreement has been executed on behalf of BTF and the District, the Board is obligated to fully implement said Agreement, retroactive to July 1, 1990". Both parties moved for summary judgment.

In support of its motion, the Board submitted an affidavit from Thompson, who averred that the Board "always exercised its right and obligation to determine the District's budget, notwithstanding that the District relies very heavily on the City of Buffalo for funding". Other affidavits submitted on behalf of the Board outlined the process by which funds are provided to the District by the City of Buffalo.

In support of its cross motion, BTF submitted an affidavit of Rumore, who averred that the agreement included several significant concessions by BTF worth millions of dollars, that the vote on September 26, 1990 was a "ratification" vote and not "legislative action" pursuant to Civil Service Law § 204-a (1), and that the past practice of the Board following the negotiation of a collective bargaining agreement was to take one vote, a ratification vote, on the agreement.

Supreme Court concluded that, because the power and duty to contract with teachers, and to compensate them, was delegated to the Board, the Board's approval under Civil Service Law § 201 (12) was required before any "compensation-related provisions within the agreement would become a binding contract". The court rejected BTF's claim that legislative approval for compensation provisions by boards of education

in the "Big Five" school districts is unnecessary because those districts are fiscally dependent upon their cities for funding. The court stated that the Civil Service Law did not distinguish between types of boards or school districts on the basis of their ability to tax. Finally, the court rejected BTF's contention that, but for the PERB violation, legislative approval would have been given, finding that it did not possess "the jurisdiction to second-guess or ignore the decisions of such elected officials regarding legislative responsibilities entrusted to their judgment".

THE LEGAL ISSUE

The parties agree that resolution of this case turns on the construction of sections 201 (12) and 204-a (1) of the Civil Service Law. Before discussing those sections, we provide a brief history of article 14 of the Civil Service Law, entitled Public Employees' Fair Employment Act but commonly referred to as the Taylor Law, by way of background.

The Taylor Law, effective September 1, 1967, replaced the Condon-Wadlin Act (Civil Service Law former § 108), which prohibited strikes in public employment and provided severe penalties for public employees who did strike. The Condon-Wadlin Act was not very effective, numerous strikes having occurred in its 20-year existence (see, Newhouse, Public Sector Labor Relations Law in New York State, at 46-47 [hereinafter referred to as Newhouse]; see also, Association of Surrogates & Supreme Ct. Reporters within City of N. Y. v State of New York, 78 NY2d 143, 152; Matter of Di Maggio v Brown, 19 NY2d 283, 289). Although the Taylor Law continued the prohibition against public employee strikes, it established the right of public employees to form or join organizations and to negotiate directly with public employers (see generally, Governor's Approval Mem, 1967 McKinney's Sessions Laws of NY, at 1527).

In 1969 the Legislature adopted Civil Service Law § 204-a (1), which provides as follows:

"Any written agreement between a public employer and an employee organization determining the terms and conditions of employment of public employees shall contain the following notice in type not smaller than the largest type used elsewhere in such agreement:

" 'It is agreed by and between the parties that any provision of this agreement requiring legislative action to permit its implementation by amendment of law or by providing the additional funds therefor, shall not become effective until the appropriate legislative body has given approval' ".

The stated purpose of the amendment was to "obviate confusion as to the effect of an agreement between an employer and employee organization by making clear (through a change in the definition of 'agreement' and by requiring notice to all employees) that legislative action is needed before the agreement becomes effective as to those provisions requiring legislative approval such as, for example, the appropriation of funds for salaries" (Mem of Senate Rules Comm, 1969 McKinney's Session Laws of NY, at 2365). In 1969 the Legislature also defined "agreement" to mean "the result of the exchange of mutual promises between the chief executive officer of a public employer and an employee organization which becomes a binding contract, for the period set forth therein, except as to any provisions therein which require approval by a legislative body, and as to those provisions, shall become binding when the appropriate legislative body gives its approval" (Civil Service Law § 201 [12]). The legislative history of those sections, however, is not helpful in resolving the issue to be decided in this case: whether the Board retained authority to approve those provisions of the September 1 agreement that required the provision of "additional funds therefor" or whether the execution of the agreement, as ordered by PERB and confirmed by this Court, effectively eliminated the Board's authority to approve the agreement.

### THE SCOPE OF PERB'S ORDER

BTF contends that, when PERB ordered execution of the agreement, there was no action left for the Board to take. BTF confuses the terms execution, ratification, and legislative approval. The confusion stems in part from the fact that Thompson, the chief executive officer of the District, negotiated the agreement and initialed a memorandum of understanding between the parties. In doing so, Thompson was not acting in his capacity as chief executive officer, but simply as a negotiator. The memorandum of understanding, therefore, was not an agreement pursuant to Civil Service Law § 201 (12), but was an agreement between the negotiators that was subject to ratification by the chief executive officer of the District and by BTF. When PERB ordered the District to execute the agreement, the effect of that order was to require Thompson, as chief executive officer, to sign the agreement on behalf of the District, thus binding the District to those provisions that did not require legislative approval.

The powers of PERB are fixed by the Legislature and cannot be expanded by the action or inaction of any party (see,

*Dunkirk Professional Firefighters' Assn. v City of Dunkirk,* 25 PERB ¶ 3029). In the context of an improper practice charge, PERB has no jurisdiction to determine the enforceability of agreements *(see, Dunkirk Professional Firefighters' Assn. v City of Dunkirk, supra).* Thus, a violation of the duty to bargain in good faith may result in a forfeiture of the executive right to ratify, and the executive may be required to execute the agreement without ratification *(see, Town of Dresden v Teamsters,* 17 PERB ¶ 3096). Forfeiture of the executive's right to ratify, however, does not affect the legislative body's authority to approve any provisions of an agreement requiring legislative approval *(see, City of Saratoga Springs v Civil Serv. Empls. Assn.,* 20 PERB ¶ 3031).

Similarly, we reject the Board's contention that BTF is barred by the doctrine of collateral estoppel or res judicata from raising the issue of forfeiture of legislative approval. The only issues that we considered in the earlier appeal related to the PERB determination. We declined to consider, because it was not ripe for determination, the issue whether legislative approval was necessary and thus BTF is not barred from raising that issue in this proceeding.

### PROVISION OF FUNDS FOR
#### SALARY INCREASES

The parties agree that whether the salary schedule provision of the agreement is subject to legislative approval is a matter of first impression in New York *(see generally,* Newhouse, *op. cit.,* at 1093). The Court of Appeals, in discussing whether compensation provisions of collective bargaining agreements are subject to annual legislative appropriations, has stated that compensation "is principally regarded as salary" and thus requires the expenditure of funds, making compensation provisions subject to legislative approval *(Association of Surrogates & Supreme Ct. Reporters within City of N. Y. v State of New York,* 78 NY2d 143, 154, *supra).* Although the issue decided in *Surrogates* does not address the question before us, it does suggest that the compensation terms of a collective bargaining agreement are subject to legislative approval. The Court of Appeals identified other contract terms that may require the expenditure of funds and thus also are subject to legislative approval, such as insurance, pensions, vacations, and military leave *(see, Association of Surrogates & Supreme Ct. Reporters within City of N. Y. v State of New York, supra).* The parties in this case, however, have focused their attention on the compensation

provisions of the agreement and we therefore have not considered whether other provisions of the agreement require legislative approval (cf., *Williamsville Cent. School Dist. v Williamsville Teachers Assn.*, 9 PERB ¶ 4517 [sabbaticals]).

BTF contends that, because the Board does not have the authority to levy taxes, its role in the budget process is merely to allocate funds, an executive function. That contention is contrary to the Taylor Law, which defines legislative body of the government, in the case of school districts, as the board of education (Civil Service Law § 201 [11]). Although the Board does not have the authority to levy taxes, it is responsible for budget decisions, which are beyond the control of the municipality (see, *Matter of Divisich v Marshall*, 281 NY 170; *Matter of Board of Educ. v DeSantis*, 136 Misc 2d 636, *mod* 133 AD2d 402). Thus, the municipality in a "Big Five" District cannot impose conditions on the way in which the money provided to the district is spent (see, *Matter of Board of Educ. v DeSantis*, 133 AD2d 402, 403, *supra*). Although the Board does not have the authority to levy taxes and raise money, it has total discretion over money within its budget and is not required to allocate funds for any specific purpose (see, *Whitney Point Cent. School Dist. v Whitney Point Teachers Assn.*, 18 PERB ¶ 4584), unless it has committed itself by legislative approval.

We find no support for BTF's position in the two decisions of this Court construing Civil Service Law § 204-a. In *Creedon Police Benevolent Assn. v City of Utica* (44 AD2d 890), we stated that Civil Service Law § 204-a "simply requires that public employment contracts shall include a statement that any provision of the agreement requiring legislative action shall not become effective until the legislative approval has been given; it does not vary or extend the instances in which legislative approval is necessary and does not create a necessity for action by a legislative body where it does not otherwise exist". Our holding did not address the issue raised by BTF. In *Matter of Reese v Lombard* (47 AD2d 327, 328), the litigation "question[ed] the validity of a public employment contract executed by the former Sheriff and the county manager and approved by resolution of the County Legislature". The new Sheriff contended that legislative approval of the agreement was not proper. We rejected that contention, as well as the contention that the outgoing Sheriff could not bind his successor. In both cases, the appropriate legislative body had approved the agreements.

We are mindful of BTF's position that the agreement was a "concession contract", whereby BTF made significant conces-

sions with respect to fringe benefits and work rules in return for promised salary increases. The Taylor Law, unfortunately, is inadequate to address that issue and, generally, to deal with the "unique problem of the school district structure" (Majority Interim Report of NY St Assembly Standing Comm on Governmental Empls [Mar. 27, 1974], quoted in Newhouse, *op. cit.,* at 642-643).

Accordingly, the judgment of Supreme Court declaring that the Board has no obligation to legislatively approve or fund the tentative agreement reached on September 1, 1990, should be affirmed.

LAWTON, FALLON, BALIO and BOEHM, JJ., concur.

Judgment unanimously affirmed, without costs.