OPINION OF THE COURT
 

 Bellacosa, J.
 

 Defendant Buffalo Teachers Federation, Inc. (Union), appeals from an order of the Appellate Division. It affirmed a judgment of Supreme Court declaring that plaintiff, Board of Education for the City of Buffalo (Board), is not obligated to approve or fund the collective bargaining agreement reached by the parties in September 1990. At the center of this longstanding dispute are provisions in the Taylor Law (Civil Service Law § 201 [12]; § 204-a [1]), as applied to the negotiated salary provisions contained in the controverted agreement.
 

 On or about September 1, 1990, negotiating teams for the Union and Buffalo School District reached a four-year agreement, which the Union membership ratified on September 3, 1990. Prior to the Superintendent’s execution of the proposed agreement, it was considered by the Board, which by a 5-4 vote then refused to give its approval on September 26, 1990. The Union filed an improper practice charge with the Public
 
 *374
 
 Employment Relations Board (PERB) in October 1990. The charge of failure to bargain in good faith stemmed from allegations that the School District’s chief negotiator sought from the outset to undermine the agreement and that this tactic led to the Board’s ultimate narrow rejection of the pact. On September 23, 1991, PERB sustained the impropér practice charge, and ordered "that the District execute, upon BTF’s demand, a document embodying the agreements reached by the parties” (24 PERB 3033, at 3068). PERB declined to order that the Board implement the agreement, however, on the ground that it lacked jurisdiction to direct that remedy.
 

 The Board started a judicial proceeding to nullify the PERB determination, but the Appellate Division unanimously confirmed it
 
 (Matter of Board of Educ. v Buffalo Teachers Fedn.,
 
 191 AD2d 985 [1993],
 
 lv denied 82
 
 NY2d 656). The Court "dismissed] the action for a declaratory judgment as premature,” noting that "[t]here is no evidence that [the Board] will not implement the provisions of the agreement upon execution” and declined to order such relief in light of the fact that "the record is not developed regarding the issue of legislative approval”
 
 (id.,
 
 at 986).
 

 Thereafter, on September 22, 1993, the Board passed a resolution that "the Superintendent of Schools shall execute on behalf of this District, upon BTF’s demand, a document embodying the agreements reached.” The Board also, nevertheless, resolved that "pursuant to Civil Service Law Section 204-a.l the Buffalo Teachers Federation be notified that by the adoption of this Resolution, this Board of Education does not legislatively approve the said agreements and will not implement the said agreements by providing the additional funds therefor.”
 

 The Board then returned to court in the action now before us, seeking a declaration that it was under no obligation to legislatively approve of, or provide for, the funding necessary for the increased salaries under the executed 1990 agreement. The Union counterclaimed for a declaration that the Board was obligated to implement the agreement, as duly executed by the parties in accordance with the confirmed PERB directive, retroactive to July 1, 1990.
 

 On cross motions for summary judgment, Supreme Court
 
 granted
 
 the Board’s motion and declared that the Board had no obligation to "legislatively approve or implement [the agreement] by funding;” it denied the Union’s cross motion and
 
 *375
 
 dismissed the counterclaim. The Union appealed and the Appellate Division affirmed (217 AD2d 366). The Court held that the prior PERB order requiring the District Superintendent to execute the agreement did not effect a legal waiver of the Board’s additionally reserved power to approve the agreement
 
 (id.,
 
 at 373). The Court reasoned that although the Board cannot levy taxes, it does possess the authority to allocate funds and such power is legislative
 
 (id.,
 
 at 374).
 

 This Court granted the Union leave to appeal and we now reverse the order of the Appellate Division. We conclude that, in this case, the Buffalo Board has not established a right to an additional legislative approval role within the meaning of Civil Service Law § 201 (12) and § 204-a (1). The Board directed the execution of the 1990 agreement (after it litigated the PERB phase of the matter) and has not shown that it is required to perform any further legislative action. Thus, it possesses no residual statutory power to frustrate the fulfillment of the otherwise validly adopted agreement.
 

 Resolution of this purely statutory construction controversy turns essentially on whether the Taylor Law prescribes a legal condition subsequent to an adopted contractual obligation related to salary provisions embodied within this agreement. Our analysis focuses on the interpretation of the 1969 amendments (L 1969, ch 24). Certain provisions of public sector collective bargaining agreements require legislative action for their implementation and are effective only when the appropriate legislative entity discretely votes to approve them. Notably, an "agreement” is defined as "the result of the exchange of mutual promises between the
 
 chief executive officer of a public employer and an employee organization which becomes a binding contract,
 
 for the period set forth therein,
 
 except as to any provisions therein which require approval by a legislative body,
 
 and as to those provisions, shall become binding when the appropriate legislative body gives its approval” (Civil Service Law § 201 [12] [emphasis added]). "[L]egislative body of the government” is defined as including a board of education (Civil Service Law § 201 [11]), and " 'chief executive officer’ in the case of school districts” is defined as the superintendent of schools (Civil Service Law § 201 [10]).
 

 Pertinently, the Taylor Law requires that agreements between public employers and unions contain a clause stating in part that " 'any provision of this agreement
 
 requiring legislative action to permit its implementation by amendment of law or by providing the additional funds therefor, shall not become
 
 
 *376
 

 effective until the appropriate legislative body has given approval’ ”
 
 (Civil Service Law § 204-a [1] [emphasis added]). The agreement in this case contains this statutorily mandated clause and also includes a provision, not independently relied on by the Board here, that it was "subject to formal adoption by the Board at a meeting of the Board to be held as soon as possible.”
 

 The enactment history behind the 1969 Taylor Law amendments indicates that the approval mechanism was added to "obviate confusion as to the effect of an agreement between an employer and employee organization by making clear (through a change in the definition of 'agreement’ and by requiring notice to all employees) that
 
 legislative action
 
 is needed before the agreement becomes effective
 
 as to those provisions requiring legislative approval
 
 such as, for example, the appropriation of funds for salaries” (Mem of Senate Rules Committee, 1969 McKinney’s Session Laws of NY, at 2365 [emphasis added]). The Legislature’s aim has been plainly undermined in this case, as confusion has long lingered over the question whether the Board has identified a legally supportable basis for its claim that the salary provisions of this 1990 collective bargaining agreement — whose four-year term ironically already ended two years ago — require explicit, additional, postpact approval to gain efficacy.
 

 The Board contends — to the satisfaction of the courts below— that the allocation of salary levels and salaries of its . teachers is inherently and always legislative in nature. The Union, on the other hand, contends that in allocating funds for teacher salaries, this fiscally dependent Board is exercising an executive rather than legislative power. We believe this controversy may be resolved on pure statutory interpretation grounds without choosing between the contentions of the parties on the larger classification ground. The Buffalo Board’s delegated and discrete range of authority with respect to this matter was exhausted after it explicitly directed due execution of the agreed-upon collectively bargained pact.
 

 The Board, nevertheless, specifically argues that the compensation features of the 1990 agreement are subject to an explicit, additional statutory approval step, which it seeks to characterize as purely legislative, simply because they involve the expenditure of additional salary amounts. This doctrinaire
 
 labelling
 
 exercise cannot override plainly expressed law governing the binding effect of the Superintendent’s Board-authorized execution of the agreement. Such an approach does
 
 *377
 
 not withstand particularized analysis and does not facilitate the proper resolution of this case.
 

 The Board concedes that its authority to expend education funds flows directly from the Legislature’s delegation. The power the Board enjoys over its budget is that of spending and allocating money, not one of appropriation. That unique power is possessed solely by the Common Council of the City of Buffalo.
 

 The Board’s theory for the postpact "re-approval” step, taken to its logical limits, would encumber all contracts bearing any varying budgetary impact terms with specific, formal, follow-up steps, even when the Board has otherwise generally accepted by operation of law and specifically directed the execution of the particular collective bargaining agreement, as occurred here.
 

 In our view, Civil Service Law § 201 (12) and § 204-a (1) neither require nor contemplate such legal disingenuity or superfluity. We are satisfied that the Taylor Law does not by its terms "vary or extend the instances in which legislative approval is necessary and does not create a necessity for
 
 action by a legislative body where it does not otherwise
 
 exist”
 
 (Creedon Police Benevolent Assn. v City of Utica,
 
 44 AD2d 890 [emphasis added]). Because the Board has not identified any further legislative action that it must perform under the pertinent statutes with respect to the salary provisions of the agreement — the only argument it attempts to make here — further approval by it is not needed for implementation of this agreement.
 

 Notably, one of the described inducements for enactment of the Taylor Law was to ameliorate the potentiality or tendency of public employers to impose unilateral conditions upon public employees. The evident arbitrariness of such uneven bargaining positions was sufficient to "give rise to employee reactions which impair the quality of service rendered and otherwise infringe upon the public interests” (Governor’s Committee on Public Employee Relations, Final Report [Taylor Committee Report], Mar. 31, 1966, reprinted in 1966 Public Papers of Governor Rockefeller, at 889-890).
 

 We are, therefore, unpersuaded by the Board’s interpretation of Civil Service Law § 201 (12) that would give this public employer Board a bait-and-switch escape hatch from negotiated, agreed-upon contract terms. Teachers, as in this case, following their ratification of the contract, were bound to all the
 
 *378
 
 contracted terms, including "give backs” and good-faith disclosure of their entire negotiating position on all terms and conditions of their employment. The Board’s statutory construction would create a "sandbag” disincentive against employee organizations agreeing "to be bound for several years by compensation provisions of a collective bargaining agreement that did not also bind the employer”
 
 (Association of Surrogates & Supreme Ct. Reporters v State of New York,
 
 78 NY2d 143, 155). To allow this Board a unilateral and inherently contradictory avoidance of its "closed, initialed and executed deal” would leave these teachers at the mercy of a profoundly flawed and unfair collective bargaining procedure. The Legislature could not have intended this, and we conclude it did not. Such a tilted field of management-labor relations would plainly conflict with the pervasive policy and other explicit terms of the Taylor Law that are designed to secure amicable, negotiated, long-term agreements.
 

 Further support for our ultimate resolution of this case may be garnered from an examination of the past practices of these parties. Courts may inform their judgments by reference to a course of dealing which places employees on notice of the need for further legislative action
 
 (see, Association of Surrogates & Supreme Ct. Reporters v State of New York, supra,
 
 at 155). In this case, the Board does not dispute or challenge that its customary practice has been to formally adopt labor contracts in a unitary action. Indeed, despite some generalized assertions, the Board acknowledges with pertinent specificity that it has never before taken or claimed a postpact "legislative approval” power as to discrete contractual provisions containing additional funding components. Thus, the Board’s past practices — providing such notice and predictability as may be properly and usefully derived therefrom — indicate that it did not assert or exercise an additional role as to contractual salary provisions of the type at issue here as subject to Civil Service Law § 204-a (1) — before this procedurally intractable controversy. To be sure,
 
 Association of Surrogates & Supreme Ct. Reporters v State of New York (supra),
 
 is distinguishable in certain other respects, but its rationale is apt and compelling with respect to the additional-step requirement urged by the Board under the statute at issue.
 

 In sum, PERB held that it did not have the authority to make the Board either adopt or legislatively approve the agreement. PERB did, however, direct within its clear authority pursuant to the terms of Civil Service Law § 201 (12) and § 205
 
 *379
 
 (5) (d) the execution of the agreement which had already been reached by the parties
 
 (Matter of Board of Educ. v Buffalo Teachers Fedn.,
 
 191 AD2d 985,
 
 lv denied
 
 82 NY2d 656,
 
 supra).
 
 Thus, under these circumstances, the Board’s direction to the Superintendent to execute the agreement must have legal meaning and be given cognizable and appropriate effect.
 

 We have considered all the other arguments of the parties and conclude that they either need not be addressed for the disposition of this case or lack merit.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, plaintiff’s motion for summary judgment denied, defendant’s cross motion for summary judgment granted and judgment granted declaring that the Board of Education for the City School District of Buffalo is required to implement the September 1, 1990, agreement retroactive to July 1, 1990.
 

 Chief Judge Kaye and Judges Simons, Titone, Smith, Levine and Ciparick concur.
 

 Order reversed, etc. •